**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

FILED

OCT - 4 07

CLERK, US DISTRICT COURT
NORFOLK, VA

JTH TAX, INC. d/b/a LIBERTY TAX
SERVICE,

       **Plaintiff,**

           Civil No.: _2:07cv-452_

v.

BAHADUR ALI RASHID, and
TAXES ETC., INC.,

       **Defendants.**

### <u>Declaration of Heather Fredette</u>

Pursuant to 28 U.S.C. § 1746, I, Heather Fredette, having personal knowledge of the facts

herein state under oath as follows:

  1. I am over the age of eighteen (18) years and am fully competent to testify to

the matter stated in this declaration.  This declaration is based upon my personal

knowledge, Liberty's corporate and business records, and information available from

Liberty's employees and agents.

  2. I am the Director of Internal Audit for JTH Tax, Inc. d/b/a Liberty Tax Service

["Liberty"] and have been since October 16, 2006.

  3. We had concerns of irregularities at the franchise offices of Bahadur Ali

Rashid and Taxes Etc., Inc. [collectively "Rashid"].  Primarily, we had reason to believe

that Rashid was under-reporting his tax returns and income to us and thereby underpaying

royalties and advertising fees to us by not processing all of his tax returns through the

Liberty system, and we wanted to investigate to gather further facts one way or the other.

4.  Therefore, on August 21, 2007, I, along with Liberty employee Ryan Dodson, attempted to perform an unannounced audit during normal business hours of the main tax processing office of Rashid located at 1215 Main St., in Pasadena, TX.

5.  Oddly, when we arrived and requested to perform an audit, one of Rashid's employees began hurriedly moving client files, and another employee began shredding client files right in front of us.

6.  Rashid's employees refused to allow us to perform the audit and informed us that Rashid was not present.

7.  We offered to show the employees the relevant provisions of the Franchise Agreements which Rashid signed with Liberty explicitly permitting us to perform such audit, but we were again denied.

8.  After waiting a moment for Rashid's employees to try to contact Ali Rashid on the telephone, which they claimed that they were unable to do, we again requested to perform an audit and we were again denied.

9.  Finally, one of Rashid's employees permitted me to take photographs of the premises, including the front office and a separate back office which I later learned from the email Rashid sent to John Hewitt is Rashid's special "check cashing room."

10. We specifically wanted to inspect the computer in the back office because we had a tip from one of Rashid's ex-employees that Rashid was using this computer to secretly process tax returns through Eagle Star Income Tax.  However, we were not permitted to inspect any computers, including this one.

11. In the front office I discovered two letters, one from Verizon and another from The Grocers Supply Co., Inc., which were both addressed to "Eagle Star Income Tax, Ali Rashid, 1215 Main Street, Suite A, Pasadena, TX 77506."

12. Attached hereto as Exhibit 1 is a true and correct copy of a photograph I took of the envelope from The Grocers Supply Co., Inc.

13. I also discovered and photographed a rolling filing cabinet labeled "ES," which would be the initials of "Eagle Star."

14. Attached hereto as Exhibit 2 is a true and correct copy of photographs I took of the filing cabinet labeled "ES."

15. One last time we requested access to Rashid's records and we were again denied. This time Ryan called the Pasadena Police non-emergency line and requested a squad car to be sent to the office. An officer arrived but explained that he was unable to compel inspection without a court order.

16. We left Rashid's office without performing an audit.

17. Thereafter we scheduled another audit with Rashid's consent and agreement.

18. On August 31, 2007, I emailed Rashid and informed him we would attempt to perform a third audit on all his franchises on September 4 & 5, 2007.

19. Although we are not required under the Franchise Agreements to provide prior notice for audits, we did this as a courtesy in hope of gaining full compliance from Rashid.

20. I specifically listed the types of documents and computers we would seek in an email to Rashid, and such documents and computers included:

      a.   Access to all computers and servers in all offices;

3

   b.  Client files;

   c.  Bank applications, bank statements and all bank paperwork;

   d.  Employment records;

   e.  A list of all marketing promotions/discounts offered during the tax season;

   f.  A report on what customers used which discounts;

   g.  Leases for all offices;

   h.  Insurance policies for all offices; and

   i.  A list of all returns started in each office.

21. Rashid did not object to any such categories.

22. Attached hereto as Exhibit 3 are true and correct copies of my two emails to Rashid on August 31, 2007.

23. On September 4, 2007, Ryan and I attempted to perform this third audit of Rashid's franchise.

24. The first thing we noticed was that all materials related to Eagle Star had simply vanished from Rashid's offices. The envelopes addressed to Eagle Star were gone and the rolling files with the "ES" on them were nowhere to be found.

25. In addition, Rashid had wiped out the electronic customer tax return files from his computers, claiming that his offices were subjected to many break ins and this was to protect his client information.

26. Further, in spite of Rashid's offer to comply, Rashid refused to provide bank statements (providing only a single page bank statement from 2007 with the expenses blacked out), refused to provide any employment records, office leases, insurance records,

4

a complete list of clients and discounts given to them, a list of all returns started in each office, and refused to inform us where he rented his computers from.

27. Most notably, when we went to the back office to inspect the computer (which we believed was the one Rashid was using to secretly process returns through Eagle Star) Rashid stopped us, claiming this computer belonged to his wife and that she used it for "homework" and he "didn't know what was on it."

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of October 2007.

Heather Fredette

THE GROCERS SUPPLY CO., INC.
P.O. BOX 14200       ATTN: R/E DEPT
HOUSTON, TX 77221-4200

ASC01200013ᒿ 127171
EAGLE STAR INCOME TAX
ALI RASHID
1215 MAIN STREET, SUITE A
PASADENA, TX 77506

EXHIBIT

1