**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

JTH TAX, INC. d/b/a LIBERTY TAX
SERVICE,

                         **Plaintiff,**

v.                                                           Civil No. 2:07cv452

BAHADUR ALI RASHID, and
TAXES ETC., INC.,

                         **Defendants.**

## LIBERTY'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiff JTH Tax, Inc. d/b/a Liberty Tax Service ["Liberty"], by counsel, files this Memorandum in Opposition to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

### I. SUMMARY OF RESPONSE

The defendants, Bahadur Ali Rashid and Taxes Etc., Inc. ("Rashid"), in their motion to dismiss for lack of subject matter jurisdiction, argue that this Court does not have subject matter jurisdiction in this case because the amount in controversy is below the $75,000 threshold necessary for diversity suits. *See* 28 U.S.C. § 1332(a). Liberty responds, contending that: (A) Liberty has facially satisfied the amount in controversy in its Complaint because its contentions are made in good faith, it cannot be shown to a legal certainty that the amount is less than $75,000, and the value of the injunction can be valued against either party; and (B) the jurisdictional facts which support Liberty's contention are sufficient as Rashid ignores two vital independently sufficient facts in his motion: First, Liberty is not just at risk of losing one year's

1

royalties and advertising fees from customer diversion. Liberty is at risk of losing a stream of monies based upon repeat and referral business that goes beyond the limited one year snapshot presented by Rashid. Second, the value of Rashid's franchises rightfully belongs to Liberty upon termination or non-renewal, and it is this value that Rashid has placed in jeopardy. Rashid's franchises have a present value of approximately $528,947.98. Liberty seeks an injunction to preserve this value from diversion to Rashid's straw entity. Finally, any doubt regarding the amount in controversy should be resolved in Liberty's favor since Rashid has deliberately hidden and withheld the very evidence Liberty needs to fully calculate its damages. Therefore, since Liberty has sufficiently pled its case and Liberty has presented sufficient jurisdictional evidence in support, the amount in controversy is satisfied and this court has diversity subject matter jurisdiction in this case.

## II. ARGUMENT

The evidentiary standard for motions made pursuant to Federal Rule of Civil Procedure 12(b)(1) depends upon whether "the challenge is a facial attack on the sufficiency of the pleadings, or an attack on the factual allegations that support jurisdiction." *Allen v. The Coll. of William & Mary,* 245 F. Supp.2d 777, 782-83 (E.D. Va. 2003). Where Rashid contests the sufficiency of the complaint, "the court must accept all of the complaint's factual allegations as true." *Id.* at 783. On the other hand, where Rashid claims that the jurisdictional facts alleged in the compliant are untrue, the pleadings are regarded as evidence. In this instance, the court "weighs the pleadings and all of the other evidence," *Allen,* 245 F. Supp.2d at 777, as well as "evidence outside the pleadings, such as affidavits or depositions or whatever other evidence has been submitted on the issues" to determine whether subject matter jurisdiction exists. *JTH Tax, Inc. v. Vacchiano*, 2006 U.S. Dist. LEXIS 78414, at *3-4 (E.D. Va. October 24, 2006).

**A.  Liberty's diversity jurisdiction contention in its Complaint is facially sufficient.**

Rashid argues that the Complaint is facially deficient with respect to alleging diversity jurisdiction because Liberty can only claim $16,699.75 for breach of the franchise agreement. *Mem. in Supp. of Mot. to Dismiss for Lack of Subject Matter Jurisdiction*, p. 3 ("*Mem. in Opp*"). However, Liberty has more than satisfied the facial requirements for diversity jurisdiction in its complaints as the contentions are presumed to be true, they are made in good faith, it cannot be shown to a legal certainty that the amount is less than $75,000, and the value of the injunction can be valued against either party, and Liberty has and continues to suffer irreparable harm.

In evaluating the facial sufficiency of the Complaint, "the court must accept all of the complaint's factual allegations as true."  *Allen,* 245 F. Supp.2d at 783; *see also Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)("In that event, all the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration.")

The Supreme Court has established the "legal certainty" test as a threshold test to determine if the complaint is facially sufficient.  "It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal."  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938); *see also McDonald Bros., Inc. v. Tinder Wholesale, LLC.,* 395 F. Supp.2d 255, 262 (M.D.N.C. 2005)(the defendant "is ordinarily bound by the amount claimed by the plaintiff unless it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed.")(*citing Thomson v. Gaskill,* 315 U.S. 442, 446 (1942)). The "sum claimed by the plaintiff controls if the claim is apparently made in good faith."  *St. Paul*, 303 U.S. at 288; *see also Shanaghan v. Cahill,* 58 F.3d 106, 112 (4th Cir. 1995)("Unless the claim for an amount over the jurisdictional prerequisite is made in bad faith, or unless it is

plain from the complaint that an amount less than the jurisdictional amount is all that is at issue, the district court has jurisdiction over the case.")  "Thus, if the right of recovery is uncertain, courts should resolve the doubt in favor of the subjective good faith of the plaintiff." *Nat'l Fruit Prod. Co. v. H&H Distrib. Servs.*, 1997 U.S. Dist. LEXIS 21440 (W.D.N.C. 1997); *see also Bishop v. Byrne,* 265 F. Supp. 460, 464 (S.D. W.Va. 1967)("Likewise, the fact that the Court may consider it highly unlikely that the plaintiff will recover the amount demanded is not enough to defeat jurisdiction, unless it appears to a legal certainty that that sum cannot be recovered.")

Additionally, the Forth Circuit has recognized the "additional complications in computing the amount in controversy in cases where an injunction is requested." *Vacchiano*, 2006 U.S. Dist. LEXIS 78414, at *6.  Where injunctive relief is sought, "it is well established that the amount in controversy is measured by the value of the object of the litigation." *Id.* (*citing Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)).  Moreover, the value of the injunction is calculated as the pecuniary result to *either* party which a judgment would produce.  *See Dixon v. Edwards*, 290 F.3d 699, 711 (4th Cir. 2002)("[T]he Vestry acknowledges, the injunction will cause Father Edwards to lose in excess of $ 75,000…. It is thereby clear that Bishop Dixon satisfies the monetary requirement for diversity jurisdiction."); *Vacchiano*, 2006 U.S. Dist. LEXIS 78414, at *6 ("In the United States Court of Appeals for the Fourth Circuit, this amount can be calculated as the value to either party.")(internal parenthetical omitted).

In accepting Liberty's allegations as true, Liberty has clearly stated a cause of action based on breach of the Franchise Agreement.  Liberty stated that Rashid had a duty to use his best efforts to promote the franchised business, and to use the software, electronic filing and bank products that Liberty provides.  *Compl.* ¶¶ 61-64.  Liberty stated that Rashid breached his

duty to comply with these obligations by diverting hundreds of high dollar tax returns to Eagle Star Income Tax, an entity we now know is listed under Rashid's wife and wife's cousin in spite of Rashid's extensive involvement to aid its operations. *Id.* at ¶¶ 22, 69. Liberty further stated that Rashid's breach of the Franchise Agreements caused Liberty to suffer damages in excess of $75,000. *Id.* at ¶ 6.

Liberty has also met the "legal certainty" test as Liberty's contentions that it has suffered damages in excess of $75,000 are made in "good faith," and nowhere in Rashid's *Mem. in Opp.* does he suggest Liberty has acted in "bad faith." Moreover, Liberty contends that Rashid's breaches have caused Liberty "irreparable harm," which Rashid concedes, *Mem. in Opp.* p. 4, and Liberty consequently requests an injunction to prevent further irreparable harm. *Compl.*, Wherefore Clause, ¶ 2.

In *Vacchiano*, this Court denied the defendant's motion to dismiss under nearly identical circumstances, and held that Liberty had sufficiently pled jurisdiction in its Complaint. *Vacchiano*, 2006 U.S. Dist. LEXIS 78414, at *13. In evaluating the "legal certainty" test, and also considering the requested injunction, the Court held:

> Defendant does not allege that Plaintiff's amount in controversy allegation was made in bad faith. In short, there is no reason to suspect that the value of the injunction plus the accounts receivable claim are not "to a legal certainty" worth more than $ 75,000.00. Plaintiff's complaint is facially sufficient in alleging diversity jurisdiction.
>
> *Id.* at *7.

Similarly, Rashid has not alleged "bad faith" on the part of Liberty in this case. Therefore, there is "no reason to suspect" that the value of Liberty's damages, including the value of the injunction to *either* party, are not "to a legal certainty" worth more than $75,000.

Since Liberty's contentions in the complaint are accepted as true, and Rashid has not alleged "bad faith," Liberty's Complaint has been sufficiently pled, and the amount in controversy requirement for subject matter jurisdiction is facially satisfied in Liberty's Complaint.

**B. The jurisdictional facts which support liberty's contention of diversity jurisdiction are legally sufficient.**

Rashid primarily bases his argument that subject matter jurisdiction does not exist on a factual attack of Liberty's claims. *Mem. in Opp.* p. 2-3. Rashids suggests Liberty's facts are "bald allegations," that it "cannot produce evidence to support it," and that "no supporting facts … exist." *Id.* at 2-3.

In fact, Liberty's facts are not bald allegations at all. Since Rashid claims the jurisdictional *facts* alleged in the Complaint are untrue, the pleadings are regarded as evidence, and the court "weighs the pleadings and all of the other evidence," along with "evidence outside the pleadings, such as affidavits or depositions" to determine whether subject matter jurisdiction exists. *Allen,* 245 F. Supp.2d at 777; *Vacchiano*, 2006 U.S. Dist. LEXIS 78414, at *3-4. Therefore, Liberty's Complaint is regarded as evidence in support of its argument, which more than sufficiently shows that the amount in controversy requirement is satisfied.

Indeed, since Rashid argues that Liberty was not injured at all, Rashid's factual attack on the amount of damages goes to the *merits* of the case, not jurisdiction. Therefore, Rashid's contention that there is not jurisdiction is incorrect. *See Garcia v. Copenhaver, Bell & Assoc.,* 104 F.3d 1256, 1261 (11th Cir. 1997)("When a factual attack on subject matter jurisdiction involves the merits of a dispute, '[t]he proper course of action for the district court … is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case.")

Nevertheless, despite the fact that Rashid has deliberately hidden, withheld and shredded the very evidence Liberty needs to accurately calculate its damages (*Fredette Decl.* ¶¶ 5-6, 24-27), Liberty now adds the following additional supporting evidence.

**1. Liberty risks losing a stream of monies based upon repeat and referral business that goes beyond the limited one year snapshot presented by Rashid.**

Rashid asserts that the total income of BIAS Investments, Inc. d/b/a Eagle Star Income Tax ("Eagle Star") was $89,893.40 since its inception. *Mem. in Opp.* p. 3. Since Liberty is entitled to a royalty and advertising fee collectively of 19% of gross receipts, Rashid argues that Liberty's true amount in controversy is really only $16,699.75, thus insufficient to satisfy the $75,000 threshold needed for diversity jurisdiction. *Id.*

This argument is flawed for multiple reasons.

First, Liberty has evidence that Eagle Star in fact received $105,143.87 in 2006 and $182,843.85 in 2007 in gross revenues, for a grand total of $287,987.72 since Eagle Star's inception. *Johnson Decl.* Taking 19% for royalties and advertising fees from these figure totals to $19,977.34 in 2006 and $34,740.33 in 2007, for a grand total of $54,717.67. *Id.* This is a 74% increase from 2006 to 2007 in Eagle Star's gross revenue. Not surprisingly, during the same time period of Eagle Star's inception Rashid's Liberty franchise gross revenues plummeted from over a million dollars, $1,023,561.28, in 2005 to $495,897.75 in 2006, a 52% decrease in a single year–the same year Rashid started Eagle Star. *Black Decl.* Although Rashid agreed in his Franchise Agreements with Liberty to use his "best efforts to promote the franchised business" he is in fact making every effort to injure these franchises.

Second, the two year snapshot that Rashid offers drastically understates the magnitude of the true harm that Rashid's activities are inflicting on Liberty because Liberty not only receives the 19% royalty and advertising fees, but also bank product fees. For example, Liberty received

7

an estimated $61,858.44 in bank product revenues on Rashid's franchises in 2006, and an estimated $54,372.18 in bank product revenues on Rashid's franchises so far in 2007. *Piper Decl.* However, Liberty has received no bank product revenues for the 512 customers Rashid diverted through Eagle Star in 2006, and the 1009 customers so far in 2007. Based upon the 1009 tax returns so far in 2007, and upon a reasonable estimate prepared by Mike Piper in his accompanying Declaration, Liberty has lost an estimated $21,990 in bank product earnings so far in 2007. *Id.*

Additionally, and more critically, the diversion and loss of customers that Rashid is causing to Liberty is not a singular, isolated one year event. When Rashid diverts a customer from Liberty, Rashid also diverts a stream of potential future repeat and referral business from Liberty. *Walters Decl.*

As the Declaration of Rory Walters explains, a typical Liberty office will increase its customer count by 47% in its second year of operation, and by an additional 36% in its third year. In addition, as Ms. Walters explains, tax preparation fees in the retail tax preparation industry have been rising at the rate of approximately 6-8% per year the last several years.

Indeed, this very Court recognized in another case involving Liberty Tax that damages caused to Liberty by wrongful customer diversion are not a singular one year event. *JTH Tax, Inc. v. H&R Block E. Tax Servs., Inc.*, 128 F. Supp.2d 926 (E.D. Va. 2001)("Block I"), *aff'd in part, reversed in part and remanded*, 28 Fed. Appx. 207 (4th Cir. 2002), *damage recalculation on remand at* 245 F. Supp.2d 749 (E.D. Va. 2002)("Block II").

In *Block I*, after the Court concluded that H&R Block had wrongfully diverted customers from Liberty due to false advertising, the Court then noted, "the average retention of a client is six years…." *Block I*, 128 F. Supp.2d at 945. Hence, the Court multiplied by six the one year

8

snapshot of damages to determine more fully the amount of damages caused to Liberty and awarded this amount. *Id.*

On remand, the Court discounted the future stream of monies to Liberty by a 3.5% discount rate. *Block II*, 245 F. Supp.2d at 754.  However, in that case, there was no evidence of the rate of inflation of tax preparation fees considered.  Here, Liberty has submitted sworn evidence that the rate of tax preparation fee increases is approximately 6-8% annually.  Hence, based on the evidence before the Court, the future income stream that Liberty would lose, applying a conservative consideration of just three years worth of estimated revenues and the more conservative 6% growth rate, would increase each year by 2.5% (6% average annual price increase, less 3.5% discount rate to adjust for present value).  As stated in the Declaration from Larry Johnson, Rashid's 2007 Eagle Star gross receipts were $182,843.85, and Liberty's lost royalties and advertising fees at 19% total $34,740.33.  Using this formula, the present value of this lost income stream over the next three years is $109,519.44. *Walters Decl.*  This projected income stream doesn't include the $19,977.34 in advertising and royalty fees Liberty already lost in 2006.  Moreover, this is an ultra conservative figure that only considers price increase and not likely volume increases since Eagle Star is going into its third year of operation, a time period which, as previously stated, ordinarily experiences high growth.

In addition, these lost customers represent lost bank products to Liberty.  As previously mentioned, due to Rashid's diversion of customers through Eagle Star, Liberty has lost an estimated $21,990 in bank product earnings so far in 2007. *Piper Decl.*  Using the same present value calculation over a three year period as above, Liberty stands to lose an additional $69,323.82 in bank product fees. *Walters Decl.*

Third, Liberty seeks an injunction against Rashid's failure to use his best efforts to promote his Liberty franchise and instead, through use of a straw entity nominally listed under his wife and wife's cousin, to divert Liberty customers away from Liberty.

In actions seeking an injunction, "the measure of jurisdiction … is the value to the plaintiff of the right he seeks to protect." *Synagro-WWT, Inc. v. Louisa County, Virginia,* 2001 U.S. Dist. LEXIS 10987 (W.D. Va. 2001)(citing *Purcell v. Summers,* 126 F.2d 390, 394 (4th Cir. 1942)).  In fact, courts in the Fourth Circuit are willing to look to either the viewpoint of the plaintiff or defendant in determining if the amount in controversy is adequate. *Id.* at 7.

**2. Liberty risks losing the value of Rashid's franchises.**

Liberty values its franchise locations at 130% of annual Net Receipts (Gross Receipts less discounts) of the territories. *Walters Decl.* Rashid's Liberty territories had Net Receipts in 2007 so far of $406,833.06, and 130% of this is $528,947.98. *Id.* Rashid has put at risk this entire value by his diversion to an off-the-books parallel entity.

In addition, it bears noting that Rashid's franchise agreements expire in 2008 at the end of their five year term. Indeed, they are subject to termination now at anytime as a result of Rashid's breaches over which this suit is brought. Upon termination or non-renewal, this entire franchise value properly belongs to Liberty. *See McCart v. H & R Block,* 470 N.E.2d 756, 764 (Ind. Ct. App. 1984)("Block has a valuable property right in its service mark…. [Under its franchise agreement], Block gave [the franchisee] the right to use that service mark and benefit from the customers it drew…. By including the covenant not to compete in the agreement, ***Block preserved the value of that property right to itself alone after the termination of the agreement***….")(emphasis added); *Brenco Enters., Inc. v. Takeout Taxi Franchising Sys., Inc.*, 2003 Va. Cir. LEXIS 86, at *93 (Va. Cir. Ct. May 23, 2003)("[A] franchise agreement is a

10

conveyance of the franchisor's good will to the franchisee for the length of the franchise. *When the franchise terminates, the good will is transferred back to the franchisor*.")(footnotes omitted)(emphasis added).

Hence, the value of the injunction sought in this case is $528,947.98 which represents the value of the franchises which are at risk of loss due to the wrongful diversion of franchise customers by Rashid. Hence, the jurisdictional threshold is easily met. *See*, *e.g.*, *Grotzke v. Kruz,* 887 F. Supp. 53 (D.R.I. 1995)(Diversity jurisdiction exists even though plaintiff seller seeks only $28,500 in missed payments under contract, because defendant buyer will lose cosmetics business worth much more than $50,000 if plaintiff prevails on claim for permanent injunction restraining buyer from continuing to use trade name, trademarks, or any other intangible rights of seller.)

**3. Any doubt regarding the amount in controversy should be resolved in Liberty's favor since Rashid has deliberately hidden and withheld evidence from Liberty.**

Interestingly, Rashid makes an evidentiary attack on the amount in controversy, bringing forth a skeletal Affidavit from his wife's cousin, Ahson Anwar, yet no Declaration from himself swearing under oath to the maximum amount of customer revenue that he has diverted to all other relatives and straw entities. Then, with this skeletal Affidavit, he wishes to put Liberty to its proof, to prove at this early stage of the proceedings, what is the damage Liberty has incurred.

However, while putting Liberty to its proof of damages early in this case, at every turn, Rashid has blocked Liberty's ability to gather and present the full evidence of its damages. Specifically, Rashid refused to allow Liberty to visit his main processing center for an audit in June, 2007. *Haley Decl.* ¶¶ 4-6 (Filed 10/04/07, Docket Entry No. 6). Rashid's employees entirely blocked Liberty's second audit later in August, 2007. *Fredette Decl.* ¶¶ 4-16 (Filed 10/04/07, Docket Entry No. 5). Moreover, when Liberty arrived for the second audit, Rashid's

11

employees started shredding documents. *Id.* at ¶ 5. When Liberty came for a third audit in September, 2007, Rashid refused to produce most of the requested information. *Id.* at ¶¶ 20-27. And Rashid removed or concealed all Eagle Star documents for the third audit. *Id.* at ¶ 24.

Therefore, in the case of any doubt as to whether Liberty has met the amount in controversy, the Court should give the benefit of any doubt to Liberty and against Rashid. "The drawing of an adverse inference against a party who fails to come forward with relevant evidence within its control is a reasonable and well-recognized evidentiary rule…." *Norfolk & W. Ry. Co. v. Transp. Communications Int'l Union*, 17 F.3d 696, 702 (4th Cir. 1994); *see also Samsung Elecs. Co. v. Rambus Inc.*, 439 F. Supp. 2d 524, 562 (E.D. Va. 2006)("where discovery material is deliberately suppressed, its absence can be presumed to have inhibited the unearthing of further admissible evidence adverse to the withholder, that is, to have substantially interfered with the aggrieved party's trial preparation." (*quoting Anderson v. Cryovac, Inc.*, 862 F.2d 910 (1st Cir. 1998))); *Silvestri v. GMC*, 271 F.3d 583 (4th Cir. 2001)("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation.").

### III. CONCLUSION

For all of the foregoing reasons, Rashid's Motion to Dismiss for Lack of Subject Matter Jurisdiction should be denied.

**JTH Tax, Inc. d/b/a Liberty Tax Service**

By: _____/s/_____
    Carl J. Khalil

Carl J. Khalil, Esq. (VSB #30250)
*Counsel for Plaintiff*
JTH Tax, Inc. d/b/a Liberty Tax Service

1716 Corporate Landing Parkway
Virginia Beach, VA 23454
Telephone number:  757-493-8855
Fax number:  800-790-3863
ckhalil@libtax.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of November 2007, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Christopher E. Gatewood, Esq. (VSB No. 45390)
Luder F. Milton, Esq. (VSB No. 71281)
Counsel to Defendants
Hirschler Fleischer, P.C.
The Edgeworth Building
2100 East Cary Street
Post Office Box 500
Richmond, VA 23218-0500

                                                  /s/
Carl J. Khalil, Esq.
*Counsel for Plaintiff*
JTH Tax, Inc. d/b/a Liberty Tax Service
1716 Corporate Landing Parkway
Virginia Beach, VA 23454
Telephone number:  757-493-8855
Fax number:  800-790-3863
ckhalil@libtax.com